# No. 25-40806

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Patty Jones,

***Plaintiff - Appellant***

v.

Lamar County; Sheriff Scott Cass; Tyler Bussell; Patty Easterwood; Deputy Courtney Womack; Broderick Franklin; Deputy Anson Amis; Medical Jailer Shannon,

***Defendants - Appellees***

---

**On Appeal from**
United States District Court for the Eastern District of Texas

4:21-CV-156

---

## BRIEF OF APPELLANT PATTY JONES

---

SUBMITTED BY:

U.A. Lewis
Lewis Law Group, P.L.L.C.
P.O. Box 27353
Houston, TX 77227

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| Anson Amis | Robert Davis of Flowers Davis, P.L.L.C. Tyler, TX |
| Anson Amis | John Fulgham of Flowers Davis, P.L.L.C. Tyler, TX |
| Tyler Bussell | Robert Davis of Flowers Davis, P.L.L.C. Tyler, TX |
| Tyler Bussell | John Fulgham of Flowers Davis, P.L.L.C. Tyler, TX |
| Scott Cass | Robert Davis of Flowers Davis, P.L.L.C. Tyler, TX |
| Scott Cass | John Fulgham of Flowers Davis, P.L.L.C. Tyler, TX |
| Patty Easterwood | Robert Davis of Flowers Davis, P.L.L.C. Tyler, TX |
| Patty Easterwood | John Fulgham of Flowers Davis, P.L.L.C. Tyler, TX |
| Lamar County | Robert Davis of Flowers Davis, P.L.L.C. Tyler, TX |
| Lamar County | John Fulgham of Flowers Davis, P.L.L.C. Tyler, TX |
| Medical Jailer Shannon | Robert Davis of Flowers Davis, P.L.L.C. Tyler, TX |
| Medical Jailer Shannon | John Fulgham of Flowers Davis, P.L.L.C. Tyler, TX |
| Courtney Womack | Robert Davis of Flowers Davis, P.L.L.C. Tyler, TX |
| Courtney Womack | John Fulgham of Flowers Davis, P.L.L.C. Tyler, TX |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| Patty Jones | U.A. Lewis of Lewis Law Group, P.L.L.C. Houston, TX |

S/U.A. A. Lewis
Attorney of record for Patty Jones

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents a recurring Rule 4(m) issue that arises when a district court uses service defects to extinguish timely filed claims after limitations has run; a preservation issue created by partial adoption of magistrate recommendations at different stages of the case; and a qualified-immunity pleading issue involving a Rule 7(a) reply that the district court treated as a one-shot merits trap. The Court would benefit from argument on how those procedural rulings intersect with the pleaded excessive-force, false-arrest, and denial-of-medical-care allegations.

# TABLE OF CONTENTS

Contents Page(s)

CERTIFICATE OF INTERESTED PERSONS.......... 2
STATEMENT REGARDING ORAL ARGUMENT.......... 4
TABLE OF CONTENTS.......... 5
TABLE OF AUTHORITIES.......... 6
JURISDICTIONAL STATEMENT.......... 8
STATEMENT OF THE ISSUES.......... 9
STATEMENT OF FACTS.......... 12
SUMMARY OF THE ARGUMENT.......... 18
ARGUMENT.......... 20
I. The Rule 4(m) / limitations dismissal was reversible error.......... 20
The district court erred in turning curable service problems into litigation-ending dismissals.......... 23
II. The Second Amended Complaint plausibly stated federal claims against the individual defendants.......... 26
III. At minimum, the with-prejudice dismissal of the municipal, supervisory, and ADA theories should be vacated and remanded for amendment.......... 38
CONCLUSION.......... 43
CERTIFICATE OF SERVICE.......... 44
CERTIFICATE OF COMPLIANCE.......... 45

# TABLE OF AUTHORITIES


| **Cases** | **Pages(s)** |
|---|---|
| *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415 (5th Cir. 2017) | 36,37 |
| *Arnold v. Williams,* 979 F.3d 262 (5th Cir. 2020) | 19,26 |
| *Barnes v. Felix,* 605 U.S. (2025) | 27,33,34 |
| *Bush v. Strain,* 513 F.3d 492 (5th Cir. 2008) | 27,33 |
| *Club Retro, L.L.C. v. Hilton,* 568 F.3d 181 (5th Cir. 2009) | 31,33 |
| *Cope v. Cogdill,* 3 F.4th 198 (5th Cir. 2021) | 36,37,38 |
| *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) | 27,33 |
| *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996) | 20,21 |
| *Easter v. Powell,* 467 F.3d 459 (5th Cir. 2006) | 36,37 |
| *Flores v. Bank of Am., N.A.*, 697 S.W.3d 243 (2023) | 29 |
| *Foman v. Davis,* 371 U.S. 178 (1962) | 38,40,41 |
| *Franks v. Delaware,* 438 U.S. 154 (1978) | 33 |
| *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995) | 35 |
| *Ikerd v. Blair, 101 F.3d 430 (5th Cir. 1996)* | 36 |
| *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) | 35 |
| *Jones v. Alcoa, Inc.*, 339 F.3d 359 (5th Cir. 2003) | 22 |
| *Johnson v. City of Shelby,* 574 U.S. 10 (2014) | 29 |
| *Malley v. Briggs*, 475 U.S. 335 (1986) | 33 |
| *Mayeaux v. La. Health Serv. & Indem. Co.,* 376 F.3d 420 (5th Cir. 2004) | 38,41 |
| *Millan v. USAA Gen. Indem. Co.,* 546 F.3d 321 (5th Cir. 2008) | 20,21 |
| *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137 (5th Cir. 2007) | 25 |
| *Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) | 20,38,41 |
| *Tarver v. City of Edna,* 410 F.3d 745 (5th Cir. 2005) | 32 |

*Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944 (5th Cir. 2014)........................ 22
*Thrasher v. City of Amarillo*, 709 F.3d 509 (5th Cir. 2013) .................................. 20,21
*Way v. Mueller Brass Co.*, 840 F.2d 303 (5th Cir. 1988)............................... 22
*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013).......................................... 35

**Statutes and Rules**

28 U.S.C. § 1291 ........................................................................................ 8
42 U.S.C. § 1983 ........................................................................................ 17
Fed. R. App. P. 4(a)(4) ................................................................................ 8
Fed. R. App. P. 32(a)(7)(B) ......................................................................... 8

# JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction under 28 U.S.C. § 1291. The district court entered its memorandum adopting the March 13, 2025 report and recommendation on April 9, 2025, and entered final judgment the same day. ROA.632-637. On May 7, 2025, Jones filed a timely post-judgment motion for reconsideration and request for leave to amend. ROA.635-638. The district court denied that motion on November 7, 2025. ROA.648-650. Jones filed a notice of appeal on December 8, 2025, and a subsequent notice on December 30, 2025. ROA.651-658. Because the timely post-judgment motion suspended the running of the appeal deadline until its disposition, the notice of appeal was timely. Fed. R. App. P. 4(a)(1)(A), 4(a)(4)(A)(iv), (vi), 4(a)(4)(B)(i).

This Court has jurisdiction under 28 U.S.C. § 1291. On April 9, 2025, the district court adopted the March 13, 2025 report and recommendation and entered final judgment dismissing the case. ROA.468. On May 7, 2025, Jones filed a post-judgment motion for reconsideration and request for leave to amend. ROA.638. On November 7, 2025, the district court denied that motion. ROA.648. Jones then filed a notice of appeal on December 8, 2025, followed by a subsequent notice on December 30, 2025. ROA.653. Because the May 7 motion was a timely post-judgment motion under Rules 59 and/or 60, the time to appeal ran from disposition of that motion. See Fed. R. App. P. 4(a)(4)(A), (B).

As to the 2025 dismissal of the remaining false-arrest and excessive-force claims against Anson Amis, Jones preserved appellate review by filing objections to Dkt. 95 on March 27, 2025. ROA.626. By contrast, as to the November 22, 2022 order adopting Dkt. 84, the district court expressly stated that "no objections thereto [had] been timely filed," even though Dkt. 84 warned that failure to file specific objections would bar appellate review except for plain error. **ROA**.468. The brief therefore should present the 2025 Amis issues under the ordinary standards of review and the 2022 dismissal issues under the stricter *Douglass* framework. Even under that more deferential lens, however, reversal is warranted where the district court used the wrong Rule 4(m) framework and later treated curable pleading defects as case-ending.

In Jones's May 7, 2025 reconsideration motion, she said she was "not seek[ing] to object to the Court's remand of state law claims," but Amis responded that no remand had occurred and that all claims had already been dismissed through Dkts. 85, 97, and 98. ROA.526,635,637.

## **STATEMENT OF THE ISSUES**

1. Whether the district court abused its discretion under Federal Rule of Civil Procedure 4(m) by allowing curable service problems to become litigation-ending dismissals after Jones timely filed suit, the court later found no clear record of delay or contumacious conduct, and the court itself granted an extension of time to complete service through February 14, 2022. ROA.445-459.

2. Whether Jones plausibly stated a Fourth Amendment excessive-force claim against Anson Amis where the complaint alleged that Amis pointed a gun at her brother, shoved her elderly mother aside, burst into the bathroom while Jones sat on the toilet partially unclothed, violently snatched her up, refused to let her cover herself, pulled her exposed body toward the doorway, and was present while another deputy groped her breasts and slammed her into a chair. ROA.186-190.

3. Whether Jones plausibly stated a false-arrest claim against Amis, or at minimum was entitled to replead any warrant-procurement theory, where the complaint alleged that an earlier phone search turned up nothing, Amis threatened to "get an arrest warrant and come back and get" Jones, and the actual source of the communications was later found to be a member of the complaining family who continued the conduct even after Jones's devices were seized. ROA.186-193.

4. If the Court reaches the 2022 merits dismissals despite the preservation problem, whether the complaint plausibly stated deliberate-indifference and state-law false-imprisonment claims, and whether the final judgment should at least be clarified so that no unadjudicated state-law theory is treated as dismissed with prejudice. ROA.192-201; ROA.491-497.

5. Whether the district court abused its discretion in denying Jones's timely post-judgment request for reconsideration and leave to amend after dismissing the case on curable pleading grounds and after channeling the remaining Amis claims through a Rule 7(a) reply. ROA.648-650.

This case arises from two nights of escalating police conduct at Patty Jones's apartment in Lamar County, Texas, followed by a jail episode in which she alleges that officers ignored obvious cardiac distress. Jones pleaded that deputies first accused her of sending harassing texts and emails, searched her phone with her consent, found nothing, and nevertheless continued to treat her as the culprit. ROA.186-187. She further pleaded that Captain Anson Amis then called her between 2:00 and 4:00 a.m., repeatedly demanded to come to her home, and became angry when she refused. ROA.187-188. The complaint goes on to describe a predawn home entry in which Amis pointed a gun at Jones's brother, shoved Jones's eighty-year-old mother aside, burst into the bathroom while Jones sat on the toilet partially unclothed, yanked her up, refused to let her button her shirt, exposed her in front of family and deputies, and was present when another deputy groped her breasts and slammed her into a chair. ROA.188-190.

Jones filed this action on February 24, 2021. ROA.465. The litigation then unfolded in two phases. In the first phase, defendants challenged service, limitations, and the sufficiency of the Second Amended Complaint. After extensive briefing and a January 6, 2022 hearing, the magistrate judge granted Jones additional time to complete service through February 14, 2022 and expressly found no clear record of delay or contumacious conduct. ROA.445-459. Later, however, the magistrate judge recommended dismissal of most claims, and on November 22, 2022, the district court adopted that recommendation. ROA.465-522; ROA.523-524. That order dismissed

the claims against Lamar County, Sheriff Cass, and Courtney Womack with prejudice; dismissed the claims against Tyler Bussell, Patty Easterwood, Medical Jailer Shannon, and Broderick Franklin without prejudice; and dismissed all claims against Amis except the Section 1983 claims for false arrest and excessive force. ROA.523-524.

In the second phase, the court required Jones to file a Rule 7(a) reply as to Amis's assertion of qualified immunity. ROA.517-519; ROA.523-524. Jones filed that reply, Amis renewed his motion to dismiss, and on March 13, 2025 the magistrate judge recommended dismissal of the remaining false-arrest and excessive-force claims with prejudice. ROA.614-621. Jones filed timely objections. ROA.626-634. On April 9, 2025, the district court adopted the recommendation, dismissed the remaining claims against Amis with prejudice, and entered final judgment dismissing the case as referenced in both adoption orders. ROA.632-637. Jones timely moved for reconsideration and requested leave to amend on May 7, 2025. ROA.635-638. The district court denied that motion on November 7, 2025. ROA.648-650. This appeal followed. ROA.651-658.

## <u>STATEMENT OF FACTS</u>

1. The first accusation yielded nothing. On the night of February 25, 2019, Deputy Courtney Womack and another male deputy came to Jones's home and immediately accused her of "terrorizing" a family through emails and text messages. Jones did not hide, flee, or obstruct. She invited the officers to inspect her phone on the spot and handed it over so they could determine whether the complaining parties' numbers

appeared in her phone or whether she had made the alleged calls. The deputy looked and found nothing. Even so, he asked whether Jones had deleted anything and warned that, if the matter "came back" to her, he would get a warrant for her arrest. ROA.186-187.

2. The predawn phone barrage and escalation. In the early morning hours of February 26, 2019, Deputy Doe's supervisor, Captain Anson Amis, called Jones between approximately 2:00 and 4:00 a.m. and immediately renewed the same accusation of telephone harassment. According to the complaint, Amis said the activity "looked like it was coming from" Jones, questioned her about Facebook and email accounts, and twice demanded to come to her home in the middle of the night to show her what he had. Jones twice refused. Amis then said he would take screenshots and ask for her cell number, even though he obviously already had her number because he was calling it. Jones hung up. He then allegedly began calling "back-to-back-to-back" in an effort to alarm, torment, and badger her. Unable to sleep, Jones called the number back and reached someone who identified himself as Amis's friend. She told him that whatever Amis needed, she would take to the sheriff's office and that there was no need for Amis to come to her home. The complaint alleges Jones could tell from the exchange that Amis was upset because he could not get his way. ROA.187-188.

3. The first home intrusion: gunpoint, bathroom seizure, exposure, and sexualized touching. Later that same night or early the next morning, Jones heard what sounded first like knocking and then like someone breaking in. Her eighty-year-old mother and

cancer-stricken brother were asleep. Her brother, who had been sleeping in the living room, opened the door and found Amis there. According to the complaint, Amis immediately pointed a gun at the brother's head, even though he was unarmed and posed no threat. As Amis backed the brother into the apartment at gunpoint, Jones's mother got up to see what was happening. Jones, meanwhile, was in the bathroom, sitting on the toilet. She grabbed the landline and called the city police department. While she was on the phone with Officer Ramirez asking what she should do about the deputies being in her home, her frail mother tried to reach the bathroom door to warn her. The complaint alleges that Amis shoved Jones's mother out of the way and burst through the bathroom door while Jones remained seated on the toilet. Jones was wearing only a nightshirt that was unbuttoned and open; she was nude from the waist down. She tried to finish and stand on her own, but the complaint says Amis violently snatched her up off the toilet before she could do so. ROA.188-189.

Jones asked if she could button her shirt. Amis refused. The complaint alleges that Amis aggressively pulled Jones toward the doorway, displaying her nude lower body to her family and to the four or five other deputies in the apartment while he fumbled with handcuffs behind her back. Jones pleaded that she never resisted. She turned sideways only to hide her exposed body because Amis would not let her cover herself. Then, according to the complaint, the same male deputy who had accompanied Womack the first night walked up and placed his hands on Jones's breasts. Jones alleges she stood there in shock, unable to do anything but stare at him "with her

mouth wide open," hoping it would not get any worse. The deputy then dragged Jones out, with her clothes still open, slammed her into a chair, and threatened to "chunk" her to the ground. Womack, a female deputy, allegedly stood in the living room with her hands on her hips while at least four or five deputies watched. None intervened. ROA.189-190.

4. The aftermath inside the apartment. The complaint does not portray this as a narrowly tailored investigative entry. It alleges that Amis had a history of providing false warrants and that deputies at the sheriff's department had a reputation in the community for generating and falsifying warrants. It further alleges that Amis questioned Jones's brother without Miranda warnings, appeared surprised that Jones lived there with her mother and brother, told Jones's mother he would explain in private what her "lil daughter" had been doing, and even asked a woman who lived in the upstairs apartment,someone Jones had never met,whether she knew what was going on downstairs. Officer Ramirez, the city officer Jones had reached by phone, arrived and called Amis outside. Amis then seized Jones's cellphone, her mother's cellphone, and a tablet without a warrant. ROA.190-191.

5. The second nighttime intrusion and arrest. Later on February 27, 2019, between roughly 10:30 and 11:00 p.m., Jones awoke to flashlights shining in her face while she was nude in bed. One man stood in her closet and another stood over her mother's bedroom doorway telling her not to shut the door. Jones had to get out of bed and dress in front of them while they glared. She then walked into the living room, where

she was told deputies had an arrest warrant for her, though she alleges they did not explain what it was for and she could not get answers. The complaint alleges that Amis stood in her face and said with obvious satisfaction: "I told you Ms. Jones I was going to get an arrest warrant and come back and get you." It was very cold outside. Jones's mother tried to hand over Jones's coat. A deputy shoved her mother, took the coat, draped it over his own arm, and did not allow Jones to wear it. As they walked Jones outside, Amis trotted up and said, "I told you to stop texting those people," even though he had already seized Jones's electronics earlier. ROA.191-192.

The complaint also alleges that Amis harassed Jones's family during transport by calling Jones's mother and asking whether Jones was there even though Jones was already in his custody. He then drove Jones down one of the "darkest known roads" in Paris, Texas, rather than taking the normal route to the sheriff's office, allegedly to intimidate her further. Once at the jail, he repeated: "I told you to stop texting those people." ROA.192.

6. The jail episode and denial of medication. Jones alleged that she had lupus, heart failure, and a damaged nerve in her brain. Once in booking, she began to feel ill and told jail personnel that she needed medical attention and her medications. According to the complaint, Amis brushed this off by saying there was nothing wrong with her except "jaileitis." Defendant Shannon checked Jones's vital signs in booking. Jones alleges her heart rate was three times higher than it should have been. Hours later, in holding, Jones again asked Shannon to bring the blood-pressure monitor down so her

vitals could be checked. Shannon allegedly did nothing. Jones further alleged she knew from prior experience how dangerous it was for her to miss a dose of medication because she had previously lost consciousness after missing one at home. Even so, Amis and Shannon allegedly ignored her pleas and provided no care. ROA.192-193.

The next afternoon, February 28, Jones finally got the attention of the jail nurse. The nurse removed her from holding and checked her vital signs. Jones alleges the readings were dangerously high,specifically, that her blood pressure and heart rate were at "stroke levels." The nurse placed nitroglycerin under Jones's tongue and said, "you've got to go . . . you're not going to die here on me." According to the complaint, the nurse did not even wait for Jones to be arraigned before arranging for her release. ROA.193.

7. The pleaded exculpatory facts. The complaint further alleges that the family Amis insisted Jones had been harassing later found out that one of their own family members, a young girl named Kiahria Franklin, was responsible for the phone and social-media activity, and that the conduct continued even after Amis had seized Jones's electronics. Jones pleaded that Amis knew this before he came to her home on February 27, 2019, but that Jones had upset him and he was not going to let her off "so easy." ROA.193.

8. The pleaded claims. Based on those facts, the Second Amended Complaint asserted claims under 42 U.S.C. § 1983 for excessive force, failure to intervene, false arrest, illegal search and seizure, deprivation of medical care, and related supervisory and

municipal-liability theories; a Texas false-imprisonment claim pleaded as an alternative to false arrest; an ADA theory directed at the denial of medical services in the jail; and a nonviable criminal-statute theory under Texas Penal Code § 42.07. ROA.194-203.

## SUMMARY OF THE ARGUMENT

This appeal should be approached in layers. The first and cleanest layer is procedural. The district court's April 12, 2022 service order expressly found that the record did not show a clear record of delay, did not show significant periods of total inactivity, and did not show contumacious conduct, then granted Jones an extension of time to complete service through February 14, 2022. ROA.445-459. Under Rule 4(m), Millan, and Thrasher, that should have ended the notion that Jones's timely filed case could be functionally terminated because service was imperfect while she was pro se and before counsel fully appeared. Yet defendants continued to press service and limitations theories as though the case were one of abandonment. It was not. The final judgment, which incorporated both the 2022 and 2025 adoption orders, should be vacated to the extent it preserves service-driven dismissals that Rule 4(m) does not justify. ROA.634-637. The Fifth Circuit has made clear that requiring a defendant to defend a case on the merits does not constitute the type of prejudice necessary to justify dismissal. *Millan*, 546 F.3d at 327.

The second layer is merits pleading. Jones's complaint did not merely recite elements. It pleaded a vivid and specific sequence of conduct by Amis: gunpoint treatment of a compliant family member, forcible entry into the bathroom, dragging a partially nude

woman from the toilet, refusal to allow her to cover herself, public exposure, sexualized touching by another deputy in Amis's presence, a retaliatory promise to "get an arrest warrant and come back and get" her, and dismissive refusal to respond when she reported life-threatening symptoms and needed medication. ROA.186-193. Under Arnold, Rule 8,not a heightened pleading code,governs. Under Bush, Deville, Club Retro, Easter, and Cope, those facts plausibly state excessive-force, false-arrest, and deliberate-indifference claims.

The district court's 2025 dismissal of the remaining Amis claims rested largely on Jones's supposed failure to provide new factual and legal detail in her Rule 7(a) reply. ROA.618-623. But the complaint itself already contained abundant factual detail; the Rule 7(a) process cannot become a merits trap that converts an otherwise plausible complaint into a with-prejudice dismissal because the plaintiff did not provide enough case law in a supplemental reply. And even if this Court concludes that some claims require more specificity,particularly any warrant-procurement theory tied to false arrest, as well as the already-dismissed municipal and ADA theories,the proper remedy is remand for targeted amendment, not affirmance of a judgment that closed the case entirely. ROA.648-650.

***The standard of review.***

As to the district court's April 9, 2025 order adopting the March 13, 2025 recommendation and dismissing the remaining claims against Anson Amis, review is

under the ordinary standards because Jones filed timely objections on March 27, 2025. ROA.626-634. A Rule 12(b)(6) dismissal based on qualified immunity is reviewed de novo, accepting well-pleaded facts as true and asking whether the complaint plausibly states a violation of clearly established law. *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020).

As to the November 22, 2022 order adopting the September 9, 2022 recommendation, the district court stated that no timely objections had been filed after warning. ROA.523-524. Those issues therefore likely face the Douglass preservation rule and review only for plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc). Even under that stricter framework, reversal is warranted where the court used the wrong Rule 4(m) standard and later turned a Rule 7(a) reply into a one-shot merits bar.

A Rule 4(m) dismissal is ordinarily reviewed for abuse of discretion. *Thrasher v. City of Amarillo,* 709 F.3d 509, 511-12 (5th Cir. 2013). But when dismissal effectively bars refiling because limitations has run, the heightened standard governing dismissals with prejudice applies. *Millan v. USAA Gen. Indem. Co.,* 546 F.3d 321, 325-27 (5th Cir. 2008). Under that standard, dismissal is proper only when there is a clear record of delay or contumacious conduct and lesser sanctions would not better serve the interests of justice. *Id.*

The denial of reconsideration and post-judgment leave to amend is reviewed for abuse of discretion. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003).

# ARGUMENT

## I. The Rule 4(m) / limitations dismissal was reversible error.

Even under that stricter clear error standard, reversal is warranted because the district court plainly used the wrong Rule 4(m) framework to dispose of timely filed federal claims and, on the merits, effectively imposed a heightened pleading burden inconsistent with controlling Fifth Circuit law. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

Rule 4(m) permits a district court either to dismiss without prejudice or to order service within a specified time when service is not timely completed. *Thrasher v. City of Amarillo,* 709 F.3d 509, 511 (5th Cir. 2013). Even in the absence of good cause, the rule "permits a district court to extend the time for service." Id.; see also *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008) (district courts have broad discretion to extend time). That discretion is particularly important where dismissal would effectively bar the plaintiff's claims. The Fifth Circuit recognizes that a discretionary extension may be warranted "if the applicable statute of limitations would bar the refiled action." *Millan*, 546 F.3d at 325 (quoting Advisory Committee Notes). Where good cause is shown, the extension is mandatory. *Thrasher*, 709 F.3d at 511.

Where, as here, dismissal would effectively bar refiling because limitations have run, the Fifth Circuit applies the heightened standard used for dismissals with prejudice. *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 325–27 (5th Cir. 2008). Under that

standard, dismissal is proper only upon a "clear record of delay or contumacious conduct" and only where a lesser sanction would not better serve the interests of justice. *Id.* at 325–26.

That standard was not satisfied. Jones timely filed suit on February 24, 2021. ROA.16; ROA.312. Her later filings explained that, while she was pro se and lacked ECF access, the district court mailed an order on June 2, 2021 extending service to July 1, 2021; that she did not receive that mailed order until June 24, 2021 and acknowledged it on June 28; that she then attempted certified-mail service on July 20, 2021; and that service was later completed on Amis and Lamar County on February 7, 2022 and on Cass and Womack on February 8, 2022. ROA.270; ROA.432. Defendants' own position was not that they lacked notice of the suit, but that the July 2021 service was defective and the later service too late. ROA.312. At worst, that is negligence and confusion in effecting service. It is not the sort of "significant periods of total inactivity" or "egregious and sometimes outrageous delays" that justify the functional equivalent of a with-prejudice dismissal. *Millan*, 546 F.3d at 326–27.

*Thrasher* does not rescue the judgment. There, the plaintiff ignored service deficiencies for months after they were expressly identified, failed to respond to the dismissal motion for another four months, and still did not re-serve the defendants until much later. *Thrasher*, 709 F.3d at 513–14. Jones's record is materially different. She tied the initial delay to late receipt of the mailed extension order while proceeding pro se; she attempted service within 30 days of actual notice; and she later completed service on

several defendants. ROA.270, 432. *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988). This case is much closer to *Millan*, where the Fifth Circuit reversed because the plaintiff had attempted service, the defendant had notice, and the circumstances did not show the kind of obstinate disregard that can support a litigation-ending dismissal. *Millan*, 546 F.3d at 326–29.

The limitations ruling was also premature. A limitations defense may support dismissal under Rule 12(b)(6) only when untimeliness is evident from the face of the pleadings, and the pleadings fail to raise any basis for tolling or the like. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014). Jones's pleadings and responses did raise such grounds. The Second Amended Complaint expressly alleged tolling. ROA.196. Her responses argued relation back, tolling, excusable neglect, late receipt of the service order, and diligence in service. ROA.257, 270, 432. Whether those theories ultimately prevail is a merits question for a properly developed record; they were enough to preclude dismissal of the pleadings.

The district court also failed to do what *Millan* requires before effectively dismissing with prejudice, to consider lesser measures. It could have extended time, accepted cure of service, or limited the consequences to defendants who had still not been served. Instead, it converted a disputed service record into a dispositive merits bar. That was legal error and an abuse of discretion. *Millan*, 546 F.3d at 325–27; *Thrasher*, 709 F.3d at 511–12.

**The district court erred in turning curable service problems into litigation-ending dismissals.**

Jones filed her action on February 24, 2021. ROA.465. When the court issued a notice of impending dismissal for failure to serve on April 29, 2021, Jones,then pro se,responded. ROA.445-446; ROA.465-466. She requested an extension on May 27, 2021, and the court granted one on June 2, 2021, extending service to July 1, 2021. ROA.446; ROA.465-466. Jones acknowledged receipt of that order on June 28, 2021. ROA.446. Summons issued on July 1, 2021, and Jones attempted service by certified mail on July 20, 2021. ROA.446-447; ROA.465-466. Counsel later appeared on October 22, 2021. ROA.446. After the January 6, 2022 hearing, the court directed supplemental briefing on limitations and service, ordered Jones to correct service deficiencies within thirty days, and stayed the case pending that briefing. ROA.447-448; ROA.14. By February 7 and 8, 2022, personal service had been accomplished on Amis, Lamar County through Judge Brandon Bell, Cass, and Womack. ROA.447-448. None of that supports abandonment.

The decisive record event is the April 12, 2022 order granting Jones's motion to extend time for service through February 14, 2022. ROA.445-459. The court did not merely grant extra time in passing. It expressly found that the record did not show "significant periods of total inactivity," did not show a "clear record of delay," and did not show "contumacious conduct." ROA.454-458. The court explained that, although Jones had failed to serve all defendants perfectly, she had attempted service while pro

se, requested extensions, retained counsel, and eventually filed returns of service for multiple defendants. ROA.445-459. Those findings track exactly what Rule 4(m), *Millan*, and *Thrasher* require when dismissal would function as a dismissal with prejudice. Under *Millan*, such a case may be dismissed only upon a clear record of delay or contumacious conduct and only when lesser measures would not better serve the interests of justice. 546 F.3d at 325-27. Under Thrasher, even when good cause is absent, the district court retains discretion to extend service rather than dismiss. 709 F.3d at 511-12.

That should have ended the matter, or at least ended defendants' attempt to repackage the case as one of inexcusably late service. Instead, service defects continued to be used as if the April 12 order did not exist. That is reversible for two related reasons.

First, the Report and Recommendation recognized that the Texas diligence rule does not apply to Jones's Section 1983 claims because this case was timely filed in federal court in compliance with the Federal Rules. ROA.490. Due diligence is primarily relevant to tolling under Texas law, not the federal Rule 4(m) analysis. *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 142 (5th Cir. 2007). That conclusion was right. Whatever force Texas diligence doctrines may have in some state-law settings, they do not convert a timely filed federal civil-rights suit into an untimely one merely because service was not perfect on the first try. Yet defendants repeatedly pressed exactly that theory. Compare ROA.300-319, with ROA.490.

Second, the same Report and Recommendation held that Jones's state-law false-imprisonment claim was not barred by limitations. ROA.491-497. The magistrate explained that defendants conceded the claim had been pleaded in the original complaint, that Amis and Womack were not "new" parties for relation-back purposes, and that the court had already exercised its Rule 4 discretion to extend service after finding good cause or, at minimum, reasons sufficient to avoid dismissal. ROA.491-497. The court declined to find lack of diligence as a matter of law precisely because its earlier Rule 4(m) order had granted Jones time to complete service. ROA.493-497.

To be clear, Jones does not defend the July 2021 certified-mail attempt as valid Texas service. Texas Rules 103, 106, and 107. Jones's mother, through certified mail, complies with federal rules of service, however. Rule 4(c)(2) permits service by any non-party over 18. ROA.304-307. Rule 4(m) gave the district court the tools to fix the problem without destroying the case. The court did in fact extend the deadline, found no clear record of delay, and recognized that limitations would otherwise function harshly. ROA.449-459. Under *Millan*, that should have foreclosed litigation-ending consequences based solely on imperfect or delayed service. 546 F.3d at 325-27. At minimum, the without-prejudice dismissals of Bussell, Easterwood, Shannon, and Franklin, later swept into the final judgment after limitations had plainly expired, should be vacated. ROA.523-524; ROA.634-637.

## II. The Second Amended Complaint plausibly stated federal claims against the individual defendants.

The district court treated Jones's pleading as if it were made of labels. It was not. The complaint contains a narrative recitation of facts, dates, actions, words spoken, the identity of participants, and the physical sequence of events. That is enough under Rule 8. In qualified-immunity cases, the pleading standard is still Twombly/Iqbal, not some extra hurdle. *Arnold v. Williams*, 979 F.3d 262, 266–67 (5th Cir. 2020). As *Arnold* explains, § 1983 claims implicating qualified immunity are not subject to a heightened pleading standard; the plaintiff need only plead specific facts with the minimal specificity necessary to satisfy Rule 8. *Id.* Jones did that here.

The 2025 dismissal of the remaining Amis claims cannot be sustained on the theory that Jones failed to plead facts. The complaint pleaded a highly specific narrative. What the district court found wanting was not factual detail in the complaint, but additional factual and legal detail in the later Rule 7(a) reply. ROA.618-623. That distinction matters, because Rule 8, not a heightened pleading, governs. *Arnold*, 979 F.3d at 266-67.

Jones pleaded that Amis arrived at the apartment in the middle of the night and immediately pointed a gun at her brother's head even though he was unarmed and compliant. ROA.188. She pleaded that he shoved her eighty-year-old mother out of the way, burst through the bathroom door while Jones sat on the toilet, violently snatched her up before she could stand on her own, and refused to let her button her

shirt even though she was nude from the waist down. ROA.188-189. She pleaded that he aggressively pulled her exposed body toward the doorway and displayed her naked lower body to her family and to the four or five other deputies in the apartment. ROA.189. She pleaded that she never resisted. *Id.* She further pleaded that another deputy then placed his hands on her breasts, dragged her out, slammed her into a chair, and threatened to "chunk" her to the ground, while Amis and the other deputies watched and did nothing. ROA.189-190. These are not labels. They are concrete facts about who did what, where, and how.

Under pre-2019 Fifth Circuit law, those allegations state an excessive-force claim. In *Bush v. Strain,* the Court held that force can be excessive even when some resistance is alleged elsewhere in the encounter, so long as the force used is greater than necessary under the circumstances. 513 F.3d 492, 501-02 (5th Cir. 2008). In *Deville v. Marcantel,* the Court held that force used during a minor-offense encounter against a person offering at most passive resistance may be objectively unreasonable. 567 F.3d 156, 167-69 (5th Cir. 2009) (per curiam). Jones's allegations are stronger than the pleadings in many cases because she alleged not just force, but humiliating force inflicted on a partially nude woman inside her home during investigation of a nonviolent communications offense. ROA.186-190.

The Supreme Court's recent decision in *Barnes v. Felix* confirms the right way to analyze this claim. A Fourth Amendment force inquiry cannot be artificially narrowed to one clipped instant; it must consider all relevant circumstances leading to the use of

force. *Barnes v. Felix,* 605 U.S. ___, 2025 WL 1401190, at *4-*7 (May 15, 2025). Appellees have tried to atomize the event and focus only on whether Jones later identified a particular medical injury in the Rule 7(a) reply. ROA.618-621. But the totality alleged in the complaint includes, a baseless accusation; a failed voluntary phone inspection; a retaliatory barrage of middle-of-the-night calls; a gun aimed at a sick, compliant family member; forced entry into the bathroom; the refusal to allow Jones to cover herself; exposure of her nude body; handcuffing while exposed; sexualized touching by another deputy; dragging; and being slammed into a chair. ROA.186-190. Even if the panel thinks some pieces of that sequence go more to bodily integrity or unreasonable seizure than to excessive force in the strictest sense, the pleaded facts still make the overall force objectively unreasonable under *Bush, Deville, Graham,* and now *Barnes*.

In dismissing the claim, the Report and Recommendation reasoned that Jones's Rule 7(a) reply did not identify an injury and that the only later-expressed physical injury,an elevated heart rate at booking,occurred too long after the bathroom incident and had originally been pleaded in connection with other claims. ROA.619-621. But the complaint itself alleges that Jones was violently snatched off a toilet, aggressively pulled while naked, groped, dragged, and slammed into a chair. ROA.188-190. At the pleading stage, that is a physical injury allegation; Rule 8 does not require a plaintiff to plead a medical chart, x-ray, or bruise photograph to state an excessive-force claim. the U.S. Supreme Court reversed a Fifth Circuit decision that had dismissed a

complaint for failing to explicitly invoke , 42 USCS § 1983. emphasizing that Rule 8 does not demand heightened pleading standards or evidentiary support for claims, even in civil rights cases. *Johnson v. City of Shelby,* 574 U.S. 10 (2014). This principle is consistent with the Texas fair notice standard, which requires only that the pleadings provide sufficient notice of the claim . Tex. R. Civ. P. 45, Tex. R. Civ. P. 47, *Flores v. Bank of Am., N.A.*, 697 S.W.3d 243 (2023). The complaint also alleges profound humiliation and a sexualized physical invasion of the body in the course of the seizure, which further underscores the unreasonableness of the force used. *Id.*

The district court had one legitimate concern in 2022: collective pleading. ROA.517-519. But Jones's complaint repeatedly identified him by name and assigned to him the most serious acts in the episode,pointing the gun, shoving the mother, bursting into the bathroom, snatching Jones up, refusing to let her cover herself, pulling her exposed body toward the doorway, taunting her about the warrant, and dismissing her medical complaints as "jaileitis." ROA.187-193. That is enough to state a claim against Amis personally. If further separation from the other deputies was needed, the remedy was targeted amendment, not with-prejudice dismissal.

**A. The complaint plausibly alleged false arrest, unlawful entry, and unreasonable search and seizure.**

Jones alleged that on February 25, 2019, Deputy Womack and another deputy came to her apartment accusing her of terrorizing a family through texts and emails; that Jones voluntarily handed over her phone to let them check whether the complaining parties'

numbers were in it; and that the deputies found nothing. ROA.196. She further alleged that in the early morning hours of February 26, Amis called her between roughly 2:00 and 4:00 a.m., accused her again, demanded to come to her home, and escalated after she refused. ROA.196. Later, according to the complaint, officers entered the home, pointed a gun at Jones's brother, shoved Jones's elderly mother aside, burst into the bathroom while Jones was on the toilet partially unclothed, refused to let her button her shirt, seized her and her devices, and later returned to arrest her on allegations the complaint says were false. ROA.196. Jones also alleged that the actual source of the harassment was later found to be a young girl in the complainants' own family and that Amis knew before the arrest that Jones was not the culprit. ROA.197.

Those facts plausibly allege a lack of probable cause. The Fourth Amendment right to be free from arrest lacking probable cause was clearly established long before these events. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 231–33 (5th Cir. 2009). And at the motion-to-dismiss stage, plaintiffs defeat qualified immunity by alleging facts that permit the inference that officers lacked even arguable probable cause. *Id.* at 232–33. That is what Jones alleged: an earlier voluntary phone inspection that turned up nothing, device seizures that still yielded no basis tying her to the crime, and later discovery that someone else committed the conduct. ROA.197-198. On those pleaded facts, the arrest was not just arguably wrong; it was plausibly unsupported from the outset.

The same factual allegations plausibly state unlawful-entry and unreasonable-search claims. The Fifth Circuit has recognized that, based on the allegations in a complaint, officers are not entitled to qualified immunity where they allegedly entered protected areas and projected official authority without a lawful basis. *Arnold*, 979 F.3d at 267–69. Jones alleged two intrusive nighttime entries into her home, including a physical breach into the bathroom while she sat on the toilet and a warrantless seizure of electronics. ROA.197. At the pleading stage, those allegations easily cross Rule 8's plausibility line.

The complaint also plausibly alleges that Amis caused Jones to be arrested without probable cause. The pleading begins with the first encounter: deputies accused Jones of terrorizing a family through calls, texts, and emails, yet when Jones voluntarily handed over her phone for inspection, the deputy found nothing linking her to the alleged conduct. ROA.186-187. That should have narrowed suspicion. Instead, Amis escalated it. He called Jones between 2:00 and 4:00 a.m., repeated the accusation, became upset when she refused to let him come over in the middle of the night, and then allegedly harassed her with repeated calls. ROA.187-188.

The complaint then alleges that, after the first home intrusion and seizure of electronics, deputies returned later and told Jones there was an arrest warrant for her. ROA.191. Crucially, Jones also pleaded that Amis stood in her face and said, "I told you Ms. Jones I was going to get an arrest warrant and come back and get you," and that he kept insisting she had to stop texting "those people" even though he had

already seized her electronics. ROA.191-192. Finally, Jones pleaded that the actual source of the communications was later discovered to be Kiahria Franklin, a young member of the complaining family, and that the conduct continued even after Jones's devices had been seized. ROA.193. She pleaded that Amis knew this before he came back for her on February 27, 2019, but that she had upset him and he was not going to let her off "so easy." *Id.* Taken together, those facts plausibly allege an arrest unsupported by probable cause and infected by retaliation or bad faith.

*Club Retro* recognizes the basic principle Jones invokes here: an arrest unsupported by probable cause violates the Fourth Amendment. *Club Retro, L.L.C. v. Hilton,* 568 F.3d 181, 204-08, 211-13 (5th Cir. 2009). Tarver says the same. *Tarver v. City of Edna,* 410 F.3d 745, 751-52 (5th Cir. 2005). At the pleading stage, Jones did not need to prove the warrant was invalid; she needed only to allege facts making it plausible that Amis caused her arrest without a lawful basis. She did that.

Appellees will emphasize that the complaint says deputies later arrived with a warrant. ROA.191. That fact does complicate the theory, because a facially valid warrant usually introduces the independent-intermediary doctrine. But it does not defeat Jones at the pleadings stage for two reasons. First, the complaint does not simply say a warrant existed; it alleges that Amis threatened to "get" a warrant after earlier efforts turned up nothing, then acted on that threat even though the real culprit was someone else and the conduct continued after Jones's devices were seized. ROA.186-193. Those allegations support the inference that the warrant process itself was tainted. Officers

do not gain immunity by procuring a warrant through materially false or reckless representations. *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978); *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986). Second, even if this Court concludes that Jones needed to identify with more precision how the warrant application was tainted, that is a repleading problem, not a reason to affirm a with-prejudice dismissal after the district court diverted the case into a Rule 7(a) reply and then punished Jones for not including enough case law in that reply. ROA.617-623; ROA.648-650.

**B. The complaint plausibly alleged excessive force.**

Jones did not plead a generic "force was excessive" conclusion. She pleaded that Amis pointed a gun at her brother even though he was unarmed and compliant; shoved her elderly mother aside; burst into the bathroom while Jones sat on the toilet wearing only an open nightshirt and nothing below the waist; violently snatched her off the toilet; refused to let her button her shirt; and that another deputy placed his hands on her breasts before Jones was dragged out and slammed into a chair, all while multiple officers watched. ROA.197. She also alleged that she did not resist, that the suspected offense was nonviolent, and that the officers had already failed to find evidence linking her to it. ROA.196-200.

Those facts state an excessive-force claim under settled Fifth Circuit law. In *Deville v. Marcantel*, the Fifth Circuit held that force used during the investigation of a minor offense, against a person offering at most passive resistance, can be objectively unreasonable under the Graham factors. 567 F.3d 156, 167–69 (5th Cir. 2009) (per

curiam). In *Bush v. Strain*, the Court held that even where some resistance may have occurred, an arrestee may still show that the force used was greater than necessary and thus objectively unreasonable. 513 F.3d 492, 498–502 (5th Cir. 2008). And the Supreme Court has now squarely rejected the Fifth Circuit's former "moment-of-threat" narrowing rule, holding that a court assessing force must consider all relevant circumstances, including facts and events leading up to the climactic moment. *Barnes v. Felix*, 605 U.S. ___, slip op. at 1–2, 5–6 (2025).

Under that totality-of-the-circumstances approach, Jones's allegations plainly state a claim. The suspected offense was minor. Jones was in her own home. She was not armed. She was on a toilet, partially unclothed. She asked only to button her shirt. ROA.197. The complaint alleges not a split-second misjudgment but an escalating series of forceful choices culminating in public exposure, sexualized touching, dragging, and slamming. ROA.197. Under *Deville*, *Bush*, and *Barnes*, that is more than enough to defeat dismissal.

**C. The complaint plausibly alleged failure to intervene.**

Jones alleged that at least four or five deputies were present in the apartment during the events, including Womack, and that none intervened while she was seized, exposed, groped, dragged, and slammed. ROA.196-200. Fifth Circuit law recognizes bystander liability where an officer knows a fellow officer is violating constitutional rights, has a reasonable opportunity to prevent the harm, and chooses not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013); *Hale v. Townley*, 45 F.3d 914, 918

(5th Cir. 1995). That standard is clearly established. *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020). Jones's allegations fit it: this was not a one-frame event captured in hindsight; it was an unfolding sequence in a small apartment while multiple officers allegedly stood by.

**D. The complaint plausibly alleged deliberate indifference to serious medical needs.**

Jones alleged that she had lupus, heart failure, and a damaged nerve in her brain; that once in booking she felt ill, told officers she needed medical attention and medication, and was ignored; that Amis dismissed her symptoms as "jailitis"; that Shannon checked her vitals and her heart rate was three times higher than it was supposed to be; that hours later Jones again asked Shannon to bring the blood-pressure monitor to holding and Shannon did nothing; and that neither Shannon nor Amis contacted a provider. ROA.198. Jones then alleged that on the afternoon of February 28, a nurse finally checked her, found her blood pressure and heart rate at "stroke levels," placed nitroglycerin under her tongue, and said Jones was "not going to die here on me." ROA.198. Those are concrete allegations of obvious medical distress, not abstract complaints.

Under Fifth Circuit law governing episodic acts or omissions, a pretrial detainee states a constitutional claim by alleging that officials had subjective knowledge of a substantial risk of serious harm and responded with deliberate indifference. *Ikerd v. Blair,* 101 F.3d 430 (5th Cir. 1996); *Cope v. Cogdill*, 3 F.4th 198, 207–08 (5th Cir. 2021);

*Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419–22 (5th Cir. 2017). And *Easter v. Powell* is especially on point: it held that ignoring heart-related complaints and delaying care can support a deliberate-indifference claim. 467 F.3d 459, 463–65 (5th Cir. 2006). Jones's allegations are at least as strong as the pleading in *Easter*. She alleged known cardiovascular conditions, visible distress, alarming vitals actually measured by jail staff, refusal to provide medication or summon treatment, and later emergency intervention by a nurse. ROA.198. That is enough to plausibly state deliberate indifference.

Jones alleged that she suffered from lupus, heart failure, and a damaged nerve in her brain; that once in booking she said she felt ill and needed medical attention and medication; that Amis dismissed her complaint as "jaileitis"; that Shannon checked her vitals and recorded a heart rate three times higher than it should have been; that Jones later asked Shannon to bring the blood-pressure monitor to holding and Shannon did not; and that neither Shannon nor Amis provided medication or summoned care until the next afternoon, when a nurse finally found Jones's blood pressure and heart rate at "stroke levels," placed nitroglycerin under her tongue, and said she was "not going to die here on me." ROA.192-193. Those are not abstract accusations of poor medical care. They are concrete allegations of obvious cardiac distress, known chronic conditions, actual vital-sign abnormalities, and dismissive refusal to act.

*Easter v. Powell* holds that ignoring heart-related complaints and delaying treatment can amount to deliberate indifference. 467 F.3d 459, 463-65 (5th Cir. 2006). *Cope v. Cogdill* and *Alderson v. Concordia Parish Correctional Facility* continue to apply the same subjective-deliberate-indifference framework to episodic acts or omissions involving pretrial detainees. *Cope v. Cogdill, 3* F.4th 198, 206-09 (5th Cir. 2021); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419-22 (5th Cir. 2017). Jones's allegations track those cases closely. If the Court reaches the 2022 dismissal of the medical-care claim, it should reverse it at least as to Amis. ROA.192-193.

B. State-law false imprisonment.

The district court's Report and Recommendation held that the false-imprisonment claim was not barred by limitations. ROA.491-497. Defendants had conceded that the claim was alleged in the original complaint within the limitations period. ROA.492. The magistrate then reasoned that Amis and Womack were not "new" parties for Rule 15 purposes and that, because the court had already exercised its Rule 4 discretion to extend service, defendants had not shown a lack of diligence as a matter of law sufficient to defeat the state-law claim. ROA.492-497. That reasoning matters now because the final judgment swept in both adoption orders without clarifying how the false-imprisonment claim ultimately fared as to each defendant. ROA.634-637. If this Court vacates any portion of the 2022 order or remands on the service issue, it should also direct that any state-law false-imprisonment claim not actually adjudicated on the

merits be treated as unresolved or without prejudice,not silently converted into a with-prejudice loss.

**III. At minimum, the with-prejudice dismissal of the municipal, supervisory, and ADA theories should be vacated and remanded for amendment.**

Even if this Court concludes that Jones's municipal, supervisory, or ADA theories were not adequately developed, affirming with-prejudice dismissal would still be wrong. Rule 15's mandate remains that leave should be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fifth Circuit continues to hold that a district court needs a "substantial reason" to deny an amendment. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003); *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Delay alone is not enough; the delay must be undue, typically because it prejudices the nonmovant or burdens the court.

This record does not justify shutting the door. Jones repeatedly amended and supplemented, asked for additional time to respond, and expressly sought leave to supplement or amend further. ROA.178,197,432. The district court itself later used a Rule 7(a) reply procedure for the surviving Amis claims, which shows that targeted repleading was a workable alternative to final dismissal. ROA.526. This is therefore not a case where the court carefully identified deficiencies, allowed meaningful repleading, and then confronted repeated noncompliance with the same directions. At minimum, if the panel is not prepared to reinstate the municipal, supervisory, and

ADA claims outright, it should vacate its with-prejudice dismissal and remand with instructions to allow amendment.

Even if this Court concludes that some claims remain insufficiently pleaded, affirmance is still not warranted. Jones filed a timely post-judgment motion for reconsideration and request for leave to amend on May 7, 2025, within twenty-eight days of final judgment. ROA.635-638. The district court denied that motion on November 7, 2025, reasoning that Jones had already amended twice and that the Rule 7(a) reply merely repeated the same conclusory allegations found in the Second Amended Complaint. ROA.648-650. That ruling was too rigid. Once the Court channels a case into a Rule 7(a) reply, it cannot pretend that the plaintiff has been given a normal opportunity to amend. A Rule 7(a) reply is a supplemental pleading device used to sharpen qualified-immunity issues; it is not a substitute for Rule 15 amendment. Yet the district court treated Jones's failure to satisfy the Rule 7(a) instruction as the decisive reason not to allow any further amendment. ROA.617-623; ROA.648-650. That is backwards. If the court concluded that the reply still did not separate the allegations against Amis cleanly enough or did not plead a warrant-procurement theory with adequate precision, the obvious remedy was to permit targeted amendment.

The latest dismissals were driven substantially by the court's view that Jones did not include enough case-specific legal analysis and enough similar authority in her Rule 7(a) reply. ROA.617-623. But a failure of legal analysis in a reply is not the same thing

as factual impossibility. The complaint already pleaded the underlying events in detail. ROA.186-203. The difference between a complaint that says "Amis falsely arrested me" and one that says "Amis threatened to get a warrant after an earlier search found nothing, then arrested me even though the real culprit was someone else and the conduct continued after my devices were seized" is precisely why the amendment exists. Jones's case should not have ended because the court believed the Rule 7(a) reply cited the wrong cases or failed to compare them carefully enough.

Additionally, Fifth Circuit law remains clear that leave to amend should be freely given absent a substantial reason for denial. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Rosenzweig*, 332 F.3d at 863-64. Here, there was no finding of bad faith, no showing that targeted amendment would have caused unusual prejudice, and no reason to believe all amendment would be futile. To the contrary, the likely areas for amendment are obvious and discrete: clarifying the precise Amis-specific facts supporting false arrest; clarifying injury allegations as to excessive force if the Court thinks more detail is required; clarifying the medical-care theory; and, if necessary, tightening the municipal and ADA theories. A targeted remand for amendment is a far more proportionate remedy than affirming a final judgment that closed the entire case.

Even if some of Jones's theories (municipal, supervisory, or ADA) are deemed insufficiently pleaded, an outright dismissal with prejudice is unwarranted. Federal Rule of Civil Procedure 15 mandates that leave to amend "should be freely given when justice so requires" (*Foman v. Davis,* 371 U.S. 178, 182 (1962)). The Fifth Circuit

requires a "substantial reason" to deny an amendment, and mere delay, without undue prejudice to the nonmovant or burden on the court, is insufficient (*Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003); *Mayeaux v. La. Health Serv. & Indem. Co.,* 376 F.3d 420, 425 (5th Cir. 2004)).

The record does not support closing the case in its entirely, repeated Efforts to Amend: Jones repeatedly sought to amend, supplemented her pleadings, and requested additional time, even expressly asking for further leave to amend ROA.178, 197, 432. The District Court's own use of a Rule 7(a) reply procedure for the surviving Amis claims demonstrates that targeted repleading was a feasible alternative to final dismissal ROA.526.This is not a case where the court carefully allowed meaningful repleading and faced repeated noncompliance. Jones filed a timely post-judgment motion for reconsideration and request for leave to amend on May 7, 2025 ROA.635-638.

The denial of the post-judgment motion was erroneous because of the misapplication of Rule 7(a), The District Court's decision to deny further amendment largely rested on Jones's perceived failure to satisfy the Rule 7(a) instruction in her reply ROA.617-623; ROA.648-650.However, a Rule 7(a) reply is a supplemental device for qualified-immunity issues, not a substitute for the full opportunity to amend under Rule 15. Treating the failure to satisfy the reply standard as a bar to all future amendment is backwards. If the court found the reply insufficient in separating Amis-specific allegations or pleading the warrant-procurement theory, the proper

remedy was to permit a targeted amendment. The final dismissals were driven substantially by the court's view that the Rule 7(a) reply lacked sufficient case-specific legal analysis ROA.617-623. A deficit in legal citation or comparison in a reply is not the same as a fundamental factual failure. The complaint already detailed the underlying events ROA.186-203. The purpose of amendment is to allow a party to refine a vague assertion ("Amis falsely arrested me") into a more precise one ("Amis threatened to get a warrant after an earlier search found nothing, then arrested me even though the real culprit was someone else and the conduct continued after my devices were seized"). The case should not have been dismissed because the court found the reply's legal analysis insufficient. Fifth Circuit law requires leave to be "freely given" absent a substantial reason. The court made no finding of bad faith, failed to show that a targeted amendment would cause unusual prejudice, and had no reason to conclude that all amendment would be futile. Here, there is a lack of substantial reason to deny amendment. To the contrary, the areas for necessary amendment were discrete and obvious and clarifying Amis-specific false arrest facts, refining injury allegations for excessive force, clarifying the medical-care theory, and, if necessary, tightening the municipal and ADA theories.

At minimum, this Court should not affirm dismissal with-prejudice. If the panel is unwilling to reinstate the municipal, supervisory, and ADA claims outright, it should vacate the dismissal and remand with instructions to allow targeted amendment. A

targeted remand is a far more proportionate remedy than affirming a final judgment that ended the entire case.

## CONCLUSION

The judgment should be reversed in its entirety. At minimum, the Court should vacate the service-and-limitations dismissal, vacate the with-prejudice dismissals of the federal claims that were inadequately but curably pleaded, and remand for further proceedings and amendment. On the pleadings already before the district court, Jones stated at least false-arrest, excessive-force, failure-to-intervene, and deliberate-indifference claims against the policymaker Amis, and individual officers.

SUBMITTED BY:

S/U.A. Lewis

Lewis Law Group, P.L.L.C.

P.O. Box 27353

Houston, TX 77227

## CERTIFICATE OF SERVICE

I certify that on April 13, 2026, the foregoing document was forwarded via ECF on today's date to all parties and counsel of record

S/U.A. Lewis

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,645 words, excluding the parts exempted by Rule 32(f). This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced 14-point Garamond font.

S/U.A. Lewis